UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
PETER A. CRAWFORD,                      )
                                        )
            Plaintiff,                   )
                                        )
        v.                              )        CIVIL ACTION
                                        )        NO. 14-13042-WGY
CELIA BLUE, individually and in         )
her official capacity as the            )
Massachusetts Registrar of Motor        )
Vehicles, and RACHEL KAPRIELIAN,        )
individually and in her official        )
capacity as the former                  )
Massachusetts Registrar of Motor        )
Vehicles,                               )
                                        )
            Defendants.                  )
_____)

YOUNG, D.J.                                      September 21, 2017

## MEMORANDUM & ORDER

## I.    INTRODUCTION

    Peter A. Crawford ("Crawford") filed this action against

Celia Blue and Rachel Kaprielian, current and former

Massachusetts Registrars of Motor Vehicles (collectively, the

"Defendants"), under 42 U.S.C. section 1983, for violation of

his rights under the federal and Massachusetts state

constitutions in connection with a speeding ticket and the

ensuing revocation of his Massachusetts operating privileges.

Crawford alleges two separate due process violations: first,

with respect to the nonrefundable $25 filing fee required to appeal a civil motor vehicle infraction ("CMVI") under Massachusetts General Laws, chapter 90C, section 3, and second, for the suspension of his Massachusetts operating privileges under the same state law. The parties filed cross-motions for summary judgment.

**A.    Procedural History**

Crawford filed an amended complaint on August 4, 2014. Am. Compl., ECF No. 6. After hearing the Defendants' motion to dismiss on November 19, 2014, this Court dismissed the complaint except for the count alleging a due process violation. Electronic Clerk's Notes, ECF No. 12. The Court later granted summary judgment after a hearing on April 8, 2015. Electronic Clerk's Notes, ECF No. 32. On appeal, the First Circuit remanded the case for a closer examination of the Mathews factors on Crawford's procedural due process claim. J. United States Ct. Appeals ("J. USCA") 2 & n.1, ECF No. 42 (citing Mathews v. Eldridge 424 U.S. 319, 334-35 (1976)).

After further discovery, the parties have now filed cross-motions for summary judgment and supporting memoranda. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 57; Pl.'s Mem. Opp'n Defs.' Cross Mot. Summ. J. and Reply Mem. Supp. Mot. Summ. J. ("Pl.'s Reply"), ECF No. 74; Defs.' Mem. Law Opp'n Pl.'s Mots. Summ. J. ("Defs.' Mem."), ECF No. 70. The parties have

also submitted statements of fact and counterstatements of fact. Pl.'s Local Rule 56.1 Statement Undisputed Material Facts Supp. Mot. Summ. J. ("Pl.'s Statement Facts"), ECF No. 58; Pl.'s Resp. Defs.' Local Rule 56.1 Statement Material Facts ("Pl.'s Resp. Facts"), ECF No. 75; Defs.' Local Rule 56.1 Statement Material Facts ("Defs.' Statement Facts"), ECF No. 72; Defs.' Resp. Pl.'s Local Rule 56.1 Statement Facts ("Defs.' Resp. Facts"), ECF No. 73. The Court heard oral arguments on the parties' cross-motions on July 14, 2017.[1] Electronic Clerk's Notes, ECF No. 80.

## B. Undisputed Factual Background

### 1. Crawford's Citation

On July 19, 2011, a police officer issued Crawford, a resident of Rye, New Hampshire, a speeding citation in the amount of $140 for driving 34 mph in a 20 mph zone in Salem, Massachusetts. Pl.'s Statement Facts ¶ 1; Defs.' Statement Facts ¶ 1. Crawford timely requested a hearing challenging the citation, but did not include the $25 filing fee because the fee was not mentioned on the ticket. Defs.' Statement Facts ¶ 2.

---

[1] The Court had understood that the parties wished to treat their cross motions as a case stated, see, e.g., TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007) (citing United Paperworkers Int'l Union Local 14 v. International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)), but, at the last minute, Crawford demurred and the Court has therefore carefully drawn all reasonable inferences against each moving party in turn, see Lowel-Light Mfg., Inc. v. Federal Deposit Ins. Corp., 848 F. Supp. 278, 281 (D. Mass. 1994).

On August 2, 2011, the Massachusetts Registry of Motor Vehicles (the "Registry") responded to Crawford's hearing request by mail, informing him that pursuant to Massachusetts General Laws, chapter 90C, section 3(A)(4), scheduling a CMVI hearing requires the payment of a $25 court filing fee.  Id. ¶ 3.  Crawford responded to the letter on August 15, 2011, refusing to pay the filing fee on the ground that it violated his state and federal constitutional rights.  Id. ¶ 4.  On August 22, 2011, a Registry employee called Crawford regarding his citation, explaining the requirements under the state law, and advised Crawford that the failure to pay the citation's assessment would result in the suspension of his Massachusetts driving privileges, which could affect his New Hampshire license.  Id.

On January 3, 2012, the Registry mailed Crawford a second notice regarding his Massachusetts driving privileges, advising him that his privileges would be suspended, effective February 2, 2012, because he had defaulted on the July 19, 2011 citation, and informing him that to avoid the suspension, he would have to pay the citation and late fees or appear at a Registry office. Id. ¶ 7.  Crawford had moved from Nashua to Rye, New Hampshire in August 2010, Pl.'s Statement Facts ¶ 1, and did not receive the notice because the Registry sent it to his old address in Nashua, Defs.' Statement Facts ¶ 7.  Having received no payment, the Registry suspended Crawford's Massachusetts operating

[4]

privileges on February 12, 2012.  Id. ¶ 8.  The New Hampshire

Division of Motor Vehicles declined to renew Crawford's New

Hampshire driver's license on April 18, 2012, because the

Massachusetts Registry's entry of suspension triggered an

electronic report to the National Driver Registry.  Id. ¶¶ 9-10.

Rather than challenge the Massachusetts suspension,

Crawford pursued administrative and judicial remedies in New

Hampshire for the non-renewal of his license.  Id. ¶ 12.  On

June 24, 2014, Crawford sent a letter to the Registry asserting

that Massachusetts General Laws, chapter 90C, section 3 did not

permit the suspension of his operating privileges for failing to

pay the filing fee.  Id. ¶ 13.  A Registry hearing officer,

treating the letter as a post-suspension appeal, issued a

decision denying Crawford's appeal on the ground that he failed

to pay the $25 filing fee.  Id. ¶ 14.  The decision informed

Crawford that he had a right to appeal to the Board of Appeal on

Motor Vehicle Liability Policies and Bonds.  Id.

### 2.  Filing Fee

Effective July 1, 2009, the Massachusetts General Court

implemented a $25 filing fee for a CMVI hearing before a clerk-

magistrate of the district court, partially to offset the costs

associated with providing the hearing.  Id. ¶ 15.  All

violators, except the indigent, must pay the filing fee to the

Registry to receive a hearing to appeal their citation.[2]  Id.  In

2009, when the filing fee first took effect, there were

extensive delays in receiving hearings (e.g., between three and

six months in one court, and possibly over six months in other

courts) due to individuals who were unprepared to pay the filing

fee and requested hearings only to receive more time to pay the

citation.  Id.

As a result of these delays, the legislature implemented a

further change, effective July 1, 2010, to have the Registry

collect the filing fee before forwarding a hearing request to

the district court for scheduling.  Pl.'s Statement Facts ¶ 13.

The funds received by the Registry, less $100,000, are

transferred to the district court.  Id. ¶ 14.  Since 2010, if a

motorist fails to pay the filing fee, the hearing request is not

transmitted to the district court.  Id. ¶ 16.  The effect of the

2010 change was to reduce wait times to as little as three

weeks.  Defs.' Statement Facts ¶ 16.

The Merit Rating Board (the "Board") and the Registry

jointly administer CMVI matters.  Id. ¶ 17.  Four employees

handle initial receipt of citations, hearing requests, and

payments.  Id.  Another two electronically scan documents into

---

[2] In 2015, the district court granted 368 indigence waivers,
as compared to the 116,825 hearing requests the Registry
received with the filing fee paid (0.32%).  Pl.'s Statement
Facts ¶ 18.

an electronic file.  Id.  Eleven employees handle data entry

related to citations with requests for hearing.  Id.  Additional

employees handle quality control and the financial

reconciliation of payments of filing fees and assessments.  Id.

The Defendants calculate that if an average of fifteen such

employees handled CMVI hearing requests each year, the annual

salary cost would range from $747,314.25 to $986,110.20.  Id.

Based on its 2013 "CMVI Staffing Model," the district court

determined that each "standard" CMVI (86% of cases) takes 25

minutes from start to finish, with 10.4 minutes spent on the

hearing and 14.6 minutes spent on administrative and clerical

tasks, while a complex case (14% of cases) takes 45 minutes,

with 19.9 minutes spent on the hearing and 24.1 minutes spent on

administrative and clerical tasks.  Id. ¶ 19.

## II.  LEGAL FRAMEWORK

### A.  Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Mulloy

v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006).  "To

succeed, the moving party must show that there is an absence of

evidence to support the nonmoving party's position."  Rogers v.

Fair, 902 F.2d 140, 143 (1st Cir. 1990).  If the moving party

satisfies its burden, the burden shifts to the non-moving party

to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). But see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)(where the moving party bears the burden of proof, absent admissions by the non-moving party, summary judgment is inappropriate as the fact-finder need not credit evidence favorable to the moving party). In reviewing motions for summary judgment, courts must resolve all disputed facts and inferences in favor of the non-moving party. See Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 219 (1st Cir. 2004). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

**B.  Massachusetts State Law**

Massachusetts General Laws, chapter 90C, section 3 gives police officers the authority to issue citations for civil motor vehicle infractions. Mass. Gen. Laws ch. 90C, § 3(A)(1). The recipient of a citation may "either pay the scheduled assessment or contest responsibility for the infraction by requesting a noncriminal hearing before a magistrate of the district court." Id. § 3(A)(2). The motorist may contest responsibility by "making a signed request for a noncriminal hearing on the back

of the citation and mailing such citation, together with a $25
court filing fee, to the registrar," which then notifies the
district court to set a hearing.  Id. § (A)(4).  Determinations
may be appealed to the appellate division.  Id. § (A)(5).  If a
violator fails to appear, the Registry will mail a notice
indicating that, "in the case of an operator violation, such
violator's operators license, learners permit or right to
operate will be suspended by operation of law and without
further notice or hearing at the expiration of thirty days from
the date of the mailing of such notice."  Id. § (A)(6).

## III. ANALYSIS

Two primary questions remain in this litigation: whether
the $25 mandatory filing fee for CMVI appeals under
Massachusetts General Laws, chapter 90C, section 3 and the
suspension of Crawford's Massachusetts operating privileges pass
constitutional muster under the Mathews balancing test.  The
Court first addresses a standing concern, then the Mathews
factors with respect to both deprivations in turn, concluding
finally with an examination of the Defendants' immunity defense
to monetary damages.

### A.   Standing

Before delving into the Mathews analysis, this Court
addresses a threshold issue.  On remand, the Defendants now
dispute Crawford's standing to challenge the filing fee, arguing

that because Crawford never paid the $25 filing fee, he "was not harmed by the due process violation he identifies." Defs.' Mem. 12. They argue that because Crawford has narrowed his constitutional challenge to instances in which the filing fee is not refunded to prevailing appellants, "Crawford needs to prove three things to establish a deprivation: that he (1) paid the $25 court-filing fee, (2) participated in the clerk-magistrate hearing and was deemed not responsible, and (3) had no opportunity [sic] recover the $25." Id.

It is well-established that to have standing, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Federal Election Comm'n, 554 U.S. 724, 733 (2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Further, "[t]he threshold issue in a procedural due process action is whether the plaintiff had a constitutionally protected property interest at stake." Mard v. Town of Amherst, 350 F.3d 184, 188 (1st Cir. 2003) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–41 (1985); Board of Regents v. Roth, 408 U.S. 564, 576–78 (1972)). The First Circuit has defined the relationship between these two requirements: "To establish an injury in fact for purposes of Takings Clause and procedural due process claims, plaintiffs

must 'show that they had an identifiable personal stake in the property rights at issue.'"  Santiago–Ramos v. Autoridad de Energía Eléctrica de Puerto Rico, AEE, 834 F.3d 103, 106 (1st Cir. 2016) (quoting Bingham v. Massachusetts, 616 F.3d 1, 7 (1st Cir. 2010)).

The question thus is whether Crawford had an "identifiable personal stake" in the $25 filing fee and in his Massachusetts operating privileges.  It is undisputed that Crawford had a constitutionally protected interest in his Massachusetts operating privileges.  See Bell v. Burson, 402 U.S. 535, 539 (1971) ("Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees.").  The Defendants, however, contend that because Crawford never paid the $25 filing fee to obtain an appeal, "Crawford's claim that he is deprived of a property interest in his $25 is purely hypothetical."  Defs.' Mem. 13.

Contrary to the Defendants' characterization, Crawford's payment of $25 is not a necessary condition of his standing to challenge the constitutionality of the fee.  Crawford is not personally seeking a refund in this case.  Whether he can "prove a legitimate entitlement to a refund," id. at 12, is in fact immaterial for the purposes of standing.  The essence of Crawford's challenge is that his operating privileges were revoked due to the inadequate procedures for appealing CMVIs --

an appeal in which the filing fee is an integral part.  This

claim is sufficient to satisfy the threshold procedural due

process requirement that Crawford possess an identifiable

property interest.[3]  Moreover, the First Circuit has already

declared that Crawford has a constitutionally protected interest

in the $25 filing fee.  J. USCA 2.  Therefore the Defendants'

reformulation of the standing requirement is unavailing.

_____

[3] The Defendants' cited authority is inapposite.  In <u>Centro
Medico del Turabo, Inc.</u> v. <u>Feliciano de Melecio</u>, 406 F.3d 1 (1st
Cir. 2005), the First Circuit held that the threshold
requirement of a "legitimate claim to entitlement" was not met
where a state statute "ma[de] it pellucid that the plaintiffs
had no legally cognizable right to vie" on an equal footing with
a medical school for a contract to operate a hospital.  <u>Id.</u> at
8.  No such state statute precludes the existence of a protected
interest here.  Nor can the Defendants rely on <u>Boston
Environmental Sanitation Inspectors Ass'n</u> v. <u>City of Boston</u>, 794
F.2d 12 (1st Cir. 1986), in which the First Circuit affirmed the
dismissal of a procedural due process claim on the grounds that
the plaintiffs failed to avail themselves of state remedies.
<u>Id.</u> at 13.  The court specifically noted that the plaintiffs did
not "allege any facts to suggest that these remedies might be
constitutionally inadequate."  <u>Id.</u>
     Furthermore, to the extent that the Defendants base their
challenge on Crawford's inability to show injury for the
purposes of Article III standing, this Court concludes that the
deterrent effect of the filing fee on CMVI appeals as well as
the revocation of Crawford's operating privileges that followed
his nonpayment of the filing fee adequately satisfies the
malleable definition of constitutionally sufficient injury
adopted by courts.  <u>See</u> <u>Adams</u> v. <u>Watson</u>, 10 F.3d 915, 918 (1st
Cir. 1993) ("The injury-in-fact inquiry 'serves to distinguish a
person with a <u>direct stake</u> in the outcome of a litigation --
<u>even though small</u> -- from a person with a mere interest in the
problem.'" (quoting <u>United States</u> v. <u>Students Challenging
Regulatory Agency Procedures</u>, 412 U.S. 669, 690 n.14 (1973)));
<u>Dimarzo</u> v. <u>Cahill</u>, 575 F.2d 15, 18 (1st Cir. 1978) (plaintiffs
had standing to challenge hazardous fire conditions even absent
physical injury or death from fire).

**B.    Procedural Due Process**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  <u>Mathews</u>, 424 U.S. at 332.  To determine what process is due, courts weigh three factors: "(1) the private interest . . . that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens posed by alternative procedural requirements."  <u>Penobscot Air Servs., Ltd.</u> v. <u>Federal Aviation Admin.</u>, 164 F.3d 713, 723 (1st Cir. 1999) (quoting <u>Mathews</u>, 424 U.S. at 335) (internal quotation marks omitted).

**1.    Filing Fee[4]**

This Court first addresses the balancing of the <u>Mathews</u> factors in Crawford's challenge to the CMVI appeals filing fee.

_____

[4] The parties cite two Supreme Judicial Court ("SJC") cases. First, in <u>Gillespie</u> v. <u>City of Northampton</u>, 460 Mass. 148 (2011), the SJC upheld a $275 filing fee in Superior Court to challenge a hearing officer's determination of responsibility for a parking ticket.  <u>Id.</u> at 149.  Under that statutory provision, however, an individual is entitled to a written appeal, followed by "a live hearing and formal adjudication by the parking clerk or a designated hearing officer, as a matter of right, at no cost, and with no restrictions imposed by formal rules of evidence or discovery."  <u>Id.</u> at 157.  Only after these

In regards to the first factor, the First Circuit noted that "the private interest at stake, which, though small ($25), is a precondition to any hearing of the relatively 'consequential' and 'serious matte[r]' of traffic violations." J. USCA 2 (alteration in original) (quoting Gillespie v. City of Northampton, 460 Mass. 148, 160 (2011)). The Supreme Judicial Court in Gillespie, examining the private interest prong, stated that although alleged parking offenders stood to lose as much as one hundred dollars, "[t]his is not an entirely insubstantial interest, but, given the small sums involved, hardly one that society would regard as 'precious.'" Gillespie, 460 Mass. at 156 (citing Commonwealth v. Barboza, 387 Mass. 105, 111 (1982)).

Most courts have noted that "deprivation of a monetary interest . . . is far less serious a harm than, for example, the deprivation of employment." Dowd v. New Castle Cty., No. 10-82-SLR, 2011 WL 1419663, at *11 (D. Del. Apr. 13, 2011) (citing City of Los Angeles v. David, 538 U.S. 715, 717-18 (2003))

---

administrative procedures have been exhausted is an individual required to pay the $275 filing fee in state court. See id. at 150-51. Second, in Police Department of Salem v. Sullivan, 460 Mass. 637 (2011), the plaintiff was denied a refund of his $25 filing fee after he was ultimately found not responsible for a traffic citation, and challenged the same statute, Mass. Gen. Laws ch. 90C, § 3, as unconstitutional. Id. at 638. There, the SJC held that the fee did not violate equal protection under a rational basis standard, but specifically stated that it would "not consider the merits of Sullivan's due process argument" because it had been waived on appeal. Id. at 639. Neither of these two cases, therefore, is on point.

(noting that civil penalties in the amount of "$100 is a small interest"); see also Sickles v. Campbell Cty., 501 F.3d 726, 730 (6th Cir. 2007) (reasoning that private interests of $20 and $110.27 "do not begin to approach the kinds of government conduct that have required a predeprivation hearing, such as a limitation on the 'historic' 'right to maintain control over [one's] home,' or the termination of government benefits, which for many people are 'the very means by which to live'" (citations omitted)).

The CMVI statistics provide further context. From 2007 to 2016, the average uncontested citations paid ranged from $129.05 to $136.86 per citation (calculated as the total uncontested amounts collected by the Registry divided by the number of uncontested citations). Pl.'s Aff. Supp. Mots. Summ. J. and Prelim. and Permanent Injs., Ex. 9, Defs.' Suppl. Resp. Pl.'s Interrogs. 15 and 16 ("CMVI Data") 10, ECF No. 61-9. In 2015 for example, the $25 fee represented 18% of the average uncontested citation amount of $135.18. Id. Furthermore, while the number of citations issued has declined from 2007 to 2016, the total amount of filing fees collected in 2015 was $2,920,625. Id. Finally, though the absolute number of indigence waivers may be small (368 in 2015), nothing in the record indicates that the process of granting such waivers is flawed. Id. Nevertheless, in light of the less serious

[15]

interest at issue and the insubstantial size of the filing fee (particularly given the indigence waiver available to those for whom the fee represents a real financial hardship), the private interest is minimal.

The second Mathews factor examines "the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (citations omitted). The Defendants appear to misunderstand (or deliberately mischaracterize) Crawford's argument, arguing that "[t]he question is not the risk of erroneous deprivation of the $25," but rather "whether there is a risk of erroneous deprivation [as to] whether an operator has an adequate opportunity to contest the citation." Defs.' Mem. 17-18. In fact, Crawford is challenging that the $25 must be paid regardless of the outcome of the hearing. Crawford expressly "agrees that the process for challenging the $140 [citation] is constitutionally adequate except for the $25 . . . 'filing fe[e].'" J. USCA 2. It is precisely the risk of erroneous deprivation of the filing fee that this Court must consider, as explicitly stated by the First Circuit. J. USCA 2.

Specifically, Crawford argues that the risk of erroneous deprivation is reflected in the CMVI statistics whenever the Registry retains the $25 filing fee following a finding of "not

responsible." Pl.'s Mem. 1-2. In 2015, the percentage of all
hearings that resulted in findings of not responsible was 57.9%,
which in absolute terms is 70,899 hearings. CMVI Data 10.
Multiplying this number by the $25 filing fee yields $1,772,475
in filing fees collected for hearings that resulted in findings
of not responsible. Id. From 2007 to 2016, in absolute terms,
the number of hearings resulting in a finding of not responsible
ranged from 50,287 to 128,358. Id. This wide range is due in
large part to the drastic reduction in total citations the
Registry received from the police. The annual percentages of
not responsible findings has stayed within a relatively narrow
band, ranging from 48.4% in 2011 to 57.9% in 2015, with an
average over the period of 52.9%. Id.

Crawford suggests two alternative procedures that he argues
would "reduce the 57.9 percent risk of erroneous deprivation to
essentially zero." Pl.'s Mem. 11. First, Crawford proposes
giving refunds to those found not responsible. Id. Second, he
suggests waiting to impose the $25 until after the motorist is
found responsible. Id. at 11. Either of these two alternative
procedures would drastically reduce the risk of erroneous
deprivation. Both would eliminate risk of erroneous deprivation
for the entire class of motorists who pay the fee, then obtain a
finding of "not responsible" Neither fix would eliminate,
however, the risk for those who pay the fee and are mistakenly

found "responsible." Furthermore, the second option – charging the fee after a finding of responsible – negates some of the deterrence effect, and therefore may lead to an increase in frivolous filings. Nevertheless, the record indicates that both of these incremental changes are feasible within the existing administrative system. Therefore, the second factor, based on the statistical evidence of the risk of erroneous deprivation coupled with Crawford's proposed incremental changes, weighs in Crawford's favor. The cost-benefit analysis for implementing these alternatives will be examined below.

The key battleground is the third factor, which breaks down into two components: "the Government's interest . . . and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Mathews</u>, 424 U.S. at 335. The first component, which considers the government's interest, is straightforward and largely undisputed here. The Defendants maintain that the Massachusetts state legislature has a legitimate and compelling interest in deterring frivolous CMVI appeals that "impose[d] great[] demands on the resources of the District Court." Defs.' Mem. 17 (alteration in original) (quoting <u>Police Dep't of Salem</u> v. <u>Sullivan</u>, 460 Mass. 637, 642 (2011)). Indeed, courts have upheld fee requirements as a means to deter frivolous

litigation.[5]  See, e.g., Hampton v. Hobbs, 106 F.3d 1281, 1288

(6th Cir. 1997) ("The government's interest in the fee system is

that of reducing frivolous prisoner suits to relieve the strain

that litigation is placing on federal courts and the prison

system in general."); In re South, 689 F.2d 162, 165 (10th Cir.

1982) (weighing legitimate interests of "recoup[ing] some of the

costs of the bankruptcy system" and deterring frivolous

proceedings in favor of government).  The record shows that wait

times for hearings were reduced from three to six months to

three weeks in one court.[6]  Defs.' Mem. 17; Defs.' Statement

Facts ¶¶ 15-16.  As courts have also held, "[t]he government has

---

[5] The Defendants claim that "[i]t is well-established that
the Commonwealth may condition the opportunity to pursue
judicial review on the payment of a fee designed to offset
administrative costs and deter frivolous filing."  Defs.' Mem.
14.  This argument overlooks a key distinction in the cases
rejecting the right to cost-free access to courts.  While the
Supreme Court has held that states may "erect reasonable
procedural requirements for triggering the right to an
adjudication," Logan v. Zimmerman Brush Co., 455 U.S. 422, 437
(1982); see also United States v. Kras, 409 U.S. 434, 446-48
(1973), the Defendants ignore the fact that filing fees in civil
cases are taxable fees that are awarded to prevailing parties,
28 U.S.C. § 1920; Fed. R. Civ. P. 54(d).  The Defendants have
not identified a case involving access to courts in which a
court upheld a fee that was never recoverable by a prevailing
party.  Cf. Yagman v. Garcetti, 852 F.3d 859, 866 (9th Cir.
2017) (upholding deposit required to challenge parking ticket
that is returned to prevailing party).

[6] Crawford notes, however, that the number of "not
responsible" findings as a percentage of total citations issued
has been decreasing, which "indicates that legitimate challenges
are being deterred as well."  Pl.'s Mem. 10.

a powerful interest in the prompt collection of revenue." Kahn
v. United States, 753 F.2d 1208, 1222 (3d Cir. 1985) (alteration
in original) (quoting Ueckert v. United States, 581 F. Supp.
1262, 1265 (D.N.D. 1984)).  Here, it is undisputed that prior to
the implementation of the 2010 change, which required the
payment of the fee in order to secure a hearing date, a
significant number of appeals were filed only to delay payment
of fees.  Defs.' Statement Facts ¶ 15.

The second part of the public interest prong contemplates a
cost-benefit analysis, and presents a more difficult question.
While the Court acknowledges on prong two that Crawford's
proposed alternative procedures would drastically reduce the
risk of erroneous deprivation, it is also true that "[a]t some
point the benefit of an additional safeguard to the individual
affected by the administrative action and to society . . . [is]
outweighed by the [public] cost," Mathews, 424 U.S. at 348.  Due
process does not require further protections where "[t]he cost
of providing additional safeguards . . . necessarily outweighs
any benefits gained by the expenditure of money and human
resources." Toney v. Burris, 881 F.2d 450, 454 (7th Cir. 1989).
Nevertheless, "these rather ordinary costs cannot outweigh the
constitutional right," Fuentes v. Shevin, 407 U.S. 67, 90 n.22
(1972) (citations omitted), and "the Constitution recognizes
higher values than speed and efficiency," id.

The Defendants note that the government interest at stake

"arises in the broader context of the Commonwealth's regulation

of motor vehicles," arguing that "[b]y driving in Massachusetts,

Crawford agreed to participate in this regulatory structure, of

which M.G.L. c. 90C § 3 is part." Defs.' Mem. 14. In support,

the Defendants point to Luk v. Commonwealth, 421 Mass. 415

(1995), in which the Supreme Judicial Court stated that

"[c]ontinued possession of [one's operating] privilege is

conditioned on obedience to the Legislature's comprehensive

regulatory scheme aimed at regulating the motorways and keeping

them safe." Defs.' Mem. 14 (quoting Luk, 421 Mass. at 423).

This argument, which appeals to the logic of constitutional

avoidance,[7] relies on the idea that the government must be

---

[7]Notably, in Markadonatos v. Village of Woodridge, 760 F.3d
545 (7th Cir. 2014), a divided Seventh Circuit examined a due
process challenge to a non-refundable "bond fee" for posting
bail. Writing for three judges, Judge Posner invoked the
constitutional avoidance doctrine to dismiss the due process
claim, stating that the $30 fee was simply part of the "cost" of
the government providing a service. Id. at 547. Analogizing it
to the right to travel, Judge Posner noted that although one has
a fundamental right to travel, one must pay for a passport. Id.
He also reasoned that

> the doctrine of constitutional avoidance functions to
> minimize friction between courts and legislatures
> (including state and municipal legislatures). The
> plaintiff asks us to hold that a local government of
> Illinois is committing grave violations of his
> constitutional rights -- rights that might conceivably
> (if implausibly) be traced all the way back to Magna
> Carta. That imputation should not lightly be leveled
> against a state government entity, even as modest a
> one as the Village of Woodridge, Illinois. A saving

permitted to charge a fee to run a government service that confers benefits on a large swath of Massachusetts society.

The Court is unpersuaded by this argument for one primary reason. If a motorist believes he or she was wrongfully cited, it is a stretch to say that they "choose" to take advantage of the appeals process where they face the dilemma of paying the fine or forfeiting their operating privileges. Indeed, the Supreme Court specifically noted in <u>Boddie</u> v. <u>Connecticut</u>, 401 U.S. 371 (1971), which involved access to divorce courts, that "[t]he requirement that these appellants resort to the judicial process is entirely a state-created matter." <u>Id.</u> at 383. It is precisely in cases such as these, in which the government forces an individual to proceed through its adjudicative process in order to exercise a right or defend a protected interest, that the Court's due process scrutiny must be at its zenith. Even where the government may have an important interest in implementing a valuable program, the Due Process Clause was "designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones." <u>Stanley</u> v.

---

construction is available to our court; we should embrace it.
<u>Id.</u> at 550.

Illinois, 405 U.S. 645, 656 (1972).  It is against that backdrop that this Court proceeds to examine the merits of Crawford's proposed alternative procedures to reduce the risk of erroneous deprivation.

Beginning with the first of Crawford's alternatives, the Registrar estimates that the cost of scaling up the existing manual refund system, which currently processes approximately 10,000 refunds, would be $172,000 per year for an expanded refund department.  Pl.'s Statement Facts ¶ 25.  Crawford adds that this cost could be reduced by automating the refund printing process, and points out that "[t]he data already exists in the Registry's computer system to enable refund checks to be printed automatically following findings of 'not responsible.'" Pl.'s Mem. 11; Pl.'s Statement Facts ¶¶ 19, 30.  In regards to the second option, the Registry estimates the cost of reprogramming at $182,000.  Pl.'s Statement Facts ¶ 32.  In addition to reprogramming, there are approximately two million unused citations in the Registry's warehouse that contain text indicating that a filing fee is required to obtain a hearing. The cost of reprinting these citations is estimated to be $227,740.  Id. ¶ 37.  The combined cost is a one-off cost of $410,000 to implement the second option.  Crawford compares these costs against the $1,772,475 in filing fees collected from 70,899 individuals who were found not responsible in 2015 alone.

This is an extremely close case. But the relatively simple adjustment of expanding or automating the existing refund process to avoid penalizing individuals who are ultimately found not responsible for the citation tips the balance of the factors in Crawford's favor. See Roberts v. Maine, 48 F.3d 1287, 1304 (1st Cir. 1995) (Cyr, J., concurring) ("The ease with which an alternative procedure can be implemented likewise weighs heavily in favor of an amendment to the [existing procedure]." (citing Mathews, 424 U.S. at 348)). Accordingly, the filing fee requirement constitutes a due process violation.

## 2. Revocation of Operating Privileges

The second, related issue, on which the First Circuit declined to take any view, is whether Crawford is entitled to an injunction restoring his Massachusetts operating privileges. J. USCA 2. Because Crawford declined to pay the filing fee to appeal his citation, and also failed to pay the citation, he defaulted on his July 19, 2011 citation pursuant to Massachusetts General Laws, chapter 90C, section 3. Defs.' Statement Facts ¶ 7. Crawford argues that because his driving privileges were suspended, "and the notice sent to, but not received . . . was not reasonably calculated to reach him, his due process rights were violated on the suspension independent of whether the fee violates due process." Pl.'s Mem. 6. On January 3, 2012, the Registry mailed Crawford a second notice

regarding his Massachusetts driving privileges, advising him
that his privileges would be suspended, effective February 2,
2012, because he had defaulted on the July 19, 2011 citation,
and informing him that to avoid the suspension, he would have to
pay the citation and late fees or appear at a Registry of Motor
Vehicles ("RMV") office.  Defs.' Statement Facts ¶ 7.  Because
of the Registry's clerical error, however, his address was not
updated, and the notice was therefore sent to his old address.
Id.  Crawford did not find out about the suspension until he was
denied a license renewal by the New Hampshire Division of Motor
Vehicles in April 2012.  Id. ¶ 10.

Crawford's challenge to the suspension of his Massachusetts
operating privileges relies primarily on the failure to receive
notice.  His argument, however, hinges on the misaddressed final
notice sent by the Registry on January 12, 2012.  First, there
is no legal support for the argument that the failure to follow
state procedures always results in a due process violation.
Indeed, courts have held that such a showing alone is not
enough.  See, e.g., Hicks v. City of Watonga, 942 F.2d 737, 746
n.4 (10th Cir. 1991).  Crawford fails to explain why the
publication of the statute, along with the August 2011 notice
and phone call from the Registry, provided insufficient notice
of the impending suspension.

Courts have noted that clear language in a statute can give notice, particularly where the individual is aware of the statute. Mard, 350 F.3d at 190 ("Mard therefore could have turned to the statute . . . if she was unclear about the reason for the Town's request to attend an Independent Medical Examination."). Furthermore, Crawford had a telephone conversation with an employee of the Registry, who explained that failure either to pay or appeal the citation would result in the suspension of his operating privileges. Def.'s Statement Facts ¶¶ 3-4. The purpose of the due process notice requirement is to ensure that an individual can take the necessary steps to challenge a deprivation. See City of W. Covina v. Perkins, 525 U.S. 234, 240 (1999) ("It follows that when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return."). On this record, the undisputed facts clearly demonstrate that Crawford was given adequate notice.

Crawford argues that there was no separate pre-deprivation hearing for the license suspension, during which he could have argued "the unconstitutionality of M.G.L. c. 90C § 3, and the fact that non-payment of the filing fee, once a hearing has been requested, is not a statutory basis for suspension." Pl.'s Mem. 17. The Mathews framework provides a more one-sided analysis on

this issue.  On the first factor, Crawford had a protected interest in his operating privileges.  <u>Bell</u>, 402 U.S. at 539. The risk of erroneous deprivation, however, was low, given the suspension was triggered by the objective fact that Crawford failed to pay or appeal his citation.  See <u>Mackey</u> v. <u>Montrym</u>, 443 U.S. 1, 13 (1979) (upholding license suspensions based on "objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him"). Finally, the Defendants correctly note that "Massachusetts has a substantial interest in securing public safety on its roads by suspending the operating privileges of drivers who default on CMVIs."  Def.'s Mem. 22.  Accordingly, the <u>Mathews</u> factors weigh against the need for a pre-deprivation hearing on the suspension.

The Defendants appeal to <u>Jones</u> v. <u>City of Boston</u>, 752 F.3d 38 (1st Cir. 2014), Defs.' Mem. 23, in which the First Circuit noted that even in the absence of a pre-deprivation hearing, "an extensive post-termination appeal system lessens the need for an elaborate pre-termination process," <u>Jones</u>, 752 F.3d at 57-58 (citing <u>Mard</u>, 350 F.3d at 192).  When the Registry received Crawford's June 2014 letter challenging his suspension, it treated the letter as a post-suspension appeal, and a hearings officer in the Driver Control Unit issued a written decision appealable to the Board of Appeal on Motor Vehicle Liability

Policies and Bonds.  Def.'s Statement Facts ¶ 14.  The
Defendants note that if Crawford had appealed to the Board, he
could have challenged the Registrar's statutory authority to
suspend his operating privileges.  Def.'s Mem. 24.  In another
session of this Court, Judge Woodlock dismissed a factually
similar due process challenge to a driver's license revocation.
Packard v. Hinden, No. 05-11906-DPW, 2007 WL 2746799, at *6 (D.
Mass. Sept. 7, 2007).  There, although the plaintiff did not
have a pre-deprivation hearing in Massachusetts, the combination
of a hearing to challenge the underlying ticket in Rhode Island
and post-deprivation procedural protections in Massachusetts
constituted adequate due process.  Id.

Because Crawford was given adequate notice and afforded
sufficient post-deprivation remedies, the Mathews factors weigh
against requiring a pre-deprivation hearing.  The suspension of
his Massachusetts driving privileges, therefore, did not violate
due process.

### C.  Immunity

Crawford's claim for damages against the Defendants in
their official capacity is foreclosed by the Commonwealth's
sovereign immunity under the Eleventh Amendment.  "As a general
matter, the Eleventh Amendment bars suits in federal courts
against unconsenting states (including 'official capacity' suits

against state hierarchs)." <u>Rosie D. ex rel. John D.</u> v. <u>Swift</u>, 310 F.3d 230, 234 (1st Cir. 2002) (citations omitted).

Crawford also sues the Defendants in their personal capacities. "[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law [<u>i.e.</u>, qualified immunity]." <u>Hafer</u> v. <u>Melo</u>, 502 U.S. 21, 25 (1991) (citations omitted). In assessing a defense of qualified immunity, courts examine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." <u>Maldonado</u> v. <u>Fontanes</u>, 568 F.3d 263, 268-69 (1st Cir. 2009) (citing <u>Pearson</u> v. <u>Callahan</u>, 555 U.S. 223, 232 (2009)). Courts have discretion to proceed directly to the second question. <u>Id.</u> at 269-70. On the second prong, the "'salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" <u>Tolan</u> v. <u>Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (quoting <u>Hope</u> v. <u>Pelzer</u>, 536 U.S. 730, 739 (2002)). Here, it is undisputed that the Defendants were merely following the letter of the state law. Crawford puts forth no evidence suggesting that they should have

known the state law was unconstitutional.  The Defendants are
therefore immunized from monetary damages.

This brings Crawford's action against the former Registrar,
Rachel Kaprelian, to an end as Crawford can have no further
claim against her. Judgment will enter in her favor.

### D.    Injunctive Relief

The Court having declared that Massachusetts' nonrefundable
filing fee -- even as to those appellants who prevail in their
CMVI hearings -- denies those appellants procedural due process,
Crawford seeks immediate injunctive relief against the current
Registrar, Celia Blue.  As a matter of discretion, the Court
declines to grant injunctive relief.

The Massachusetts Constitution of 1780 established the
principle of separation of powers among the legislative,
executive, and judicial branches of the Commonwealth's
government, Massachusetts General Laws Annotated, part 1,
article 30, and provided a template for the incorporation of
that same principle in our United States Constitution.  See,
e.g., Bernard Schwartz, Curiouser and Curiouser: The Supreme
Court's Separation of Powers Wonderland, 65 Notre Dame L. Rev.
587, 588-589 (1990) (discussing the influence of this state
provision on the U.S. Constitution).  Massachusetts's
jurisprudence, however, came to develop a respectful presumption
not as fully developed in its federal counterpart -- the

rebuttable presumption that once the law is authoritatively declared, executive agencies will be presumed to follow the law without explicit order. Massachusetts Coal. for Homeless v. Secretary of Human Servs., 400 Mass. 806, 825 (1987) ("[I]t has been our practice to assume that public officials will comply with the law declared by a court and that consequently injunctive orders are generally unnecessary."); see also Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 651 (2000); Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 543 (1942).

So here. Once the Registrar has evaluated her appellate options (this is, after all, a close case, supra at section III.B.1), this Court has every confidence that she, in cooperation with the Massachusetts General Court, will -- without federal judicial order -- obey the United States Constitution and devise a procedure to refund the filing fee to those held to have been wrongfully cited for motor vehicle infractions. How she does it ought be up to her. She may, of course, continue to charge everyone who can afford it a filing fee in order to deter frivolous appeals. Indeed, she may raise the filing fee for every appellant to cover the Commonwealth's administrative costs in returning the fee to those found to have been wrongfully cited. Or perhaps she could devise an even more

innovative solution.  It is up to her so long as it is
constitutional.

## IV.  CONCLUSION

For the reasons set forth above, Crawford's motion for
summary judgment is ALLOWED in part with respect to Crawford's
due process challenge to the filing fee requirement of
Massachusetts General Laws, chapter 90C, section 3.  Although
this case presents a very close question, the due process
balancing weighs in Crawford's favor.  On the related challenge
to the suspension of his Massachusetts operating privileges, the
combination of adequate notice and post-deprivation remedies
constitutes sufficient due process.  In this and all other
respects Crawford's motion for summary judgment is DENIED.  The
Defendants' motion for summary judgment is DENIED insofar as the
current Registrar must now deal with this Court's declaration of
the constitutional law.  The Court is confident she will do so.
As to remedies, the Defendants' motion for summary judgment is
ALLOWED and judgment shall enter for both Defendants.

        **SO ORDERED.**

                                /s/ William G. Young
                                WILLIAM G. YOUNG
                                DISTRICT JUDGE